[Nos. 29210-0-III; 29746-2-III.   Division Three.   September 18, 2012.]

*In the Matter of* BETTE LYN KELLY, *Appellant,* and PETER MOESSLANG, *Respondent.*

*Allen M. Gauper* (of *Salina Sanger & Gauper*); and *George M. Ahrend* and *Matthew C. Albrecht* (of *Ahrend Albrecht PLLC*), for appellant.

*J. Elizabeth Brown* and *William C. Schroeder* (of *Paine Hamblen LLP*), for respondent.

¶1 SWEENEY, J. — The trial court summarily dismissed a suit to establish the existence of a committed intimate relationship (CIR). The court concluded that suit had to be brought within three years of the end of the relationship and here it was not. We agree with the holding and therefore affirm the dismissal, but we reverse the award of attorney fees and costs.

## FACTS

¶2 Bette Lyn Kelly and Peter Moesslang began living together in 1984. From 1986 to 2006, they lived in a house in Liberty Lake, Washington. They dispute when their

relationship ended. Ms. Kelly urges that it ended in 2006. She says that they had some rough patches between 1999 and 2001 and in 2004, but that they did not break up until 2006. At that time, she says Mr. Moesslang built a house for her in Spokane. There is no dispute that Ms. Kelly lived alone in a Spokane house titled in Mr. Moesslang's name beginning in the fall of 2006. Mr. Moesslang urges that the relationship ended in 1999. He says he was in a "significant romantic relationship" with another woman, Denise Cole, beginning in 1999.

¶3 Ms. Kelly filed a "complaint to divide property acquired during the [CIR] and for other relief" on October 9, 2009. Clerk's Papers (CP) at 3. She alleged facts supporting the proposition that the two were in a CIR from 1984 to 2006. She alleged that they acquired real property and business interests during the relationship. She also alleged that Mr. Moesslang promised that the Spokane house belonged to her. She sought (1) a judgment declaring that the two were in a CIR from 1984 to 2006, (2) an equitable division of property acquired during that period, (3) the Spokane house, and (4) "such other and further relief as the court deems just and equitable." CP at 7.

¶4 Mr. Moesslang pleaded the statute of limitations as an affirmative defense. He moved for summary judgment on that issue. The court concluded that the three-year statute of limitations in RCW 4.16.080(3) ("an action upon a contract or liability, express or implied, which is not in writing") applied to any action to establish a CIR and that such an equitable cause of action accrues when the relationship ends. The court ordered the parties to file briefs on whether there was a CIR and, if so, when it began and ended. Mr. Moesslang argued that the evidence showed that they were not in a CIR as of October 9, 2006 (the last day for the cause of action to accrue).

¶5 Kevin Peden, a computer forensics expert, recovered e-mails from Ms. Kelly to others that were stored on Mr. Moesslang's computer hard drives. In e-mails from 2003 to

2005, Ms. Kelly acknowledges that she was "single" and that Mr. Moesslang was involved with Ms. Cole. A December 22, 2003 e-mail from Ms. Kelly to Yong Lee discusses the relationship between Mr. Moesslang and Ms. Cole, and Ms. Kelly's severing ties with Mr. Moesslang: "I purchased just one item for Peter[,] a travel guide book on New Mexico where he will be leaving for early morning on Xmas day. I'll include a note for his and Denise's Xmas together and my promise for our complete separation in 2004." CP at 464. In a January 27, 2004 e-mail to Tim Murphy she explained her relationship with Mr. Moesslang: "He has not been a part of my personal life for a long, long time now—eons, as I've explained to you. . . . We remained 'a family' until [my son] finished school completely, but for years now, he lives his life and I live mine." CP at 478. In a June 9, 2004 e-mail to Gordon Griffith, Ms. Kelly again confirmed that she was not in a relationship with Mr. Moesslang:

> [T]oday we are still friends . . . . This worked quite well until about five years ago or so. At that time when we both realized that our lives would not be "together" in the future, we built a house at Trail Creek (up Paradise Valley) so I would have a place to call "home." . . . Peter has been with a woman for several years, but then he also sees "others" on the side as well. But Denise (his woman) lives in Seattle, so he now spends much time there . . . . And I've been "single" so to speak for many years now.

CP at 47-48. In another e-mail, sent on August 13, 2004, Ms. Kelly referred to herself as single: "She's single, like myself, and we're both lousy 'daters.' " CP at 493. Finally, a November 8, 2005 e-mail to Uta Menzel also confirmed that Ms. Kelly and Mr. Moesslang were no longer in a relationship. Ms. Kelly wrote:

> Denise has consumed his life. He pretty much lives in Seattle, returning to Liberty Lake only for work reasons, in the middle of each week. He leaves each and every weekend (sometimes for three or four days), so it feels like he lives in Seattle, and only commutes to work here. . . . They (Peter and Denise) appear to

be closer than I had ever expected of him. . . . I am treated more like just an employee now. We do nothing whatsoever socially together—never.

CP at 87-88. In his own declaration, Mr. Moesslang stated that he had been in a "significant romantic relationship" with Ms. Cole since 1999 or 2000. CP at 62. He confirmed that he had spent between 20 and 42 weekends with Ms. Cole every year from 2000 to 2008. He attached credit card statements and flight records as proof of his weekend activities.

¶6 Ms. Kelly responded and declared that everything in the complaint was true and correct. She declared that she "was shocked and horrified to read the declaration of Peter Moesslang discussing his alleged relationship with Denise Cole during the time we were living as a family." CP at 203. She also declared that she began looking for her own home in 2004 because "our living arrangement was becoming increasingly difficult." CP at 375. She said that she believed that Mr. Moesslang constructed the Spokane house "partially [to] reassure me that we were a family" and "as a partial satisfaction of our relationship rights." CP at 375. She further explained that in 2007, she was nervous because she and Mr. Moesslang did not have a formal agreement. She decided to get legal advice. She and Mr. Moesslang tried to negotiate a settlement for the next two years. She said that she delayed filing an action because she was living in the Spokane house and believed that the issues between her and Mr. Moesslang would be resolved.

¶7 Ms. Kelly's son, Ty Kelly, also filed a declaration. He said that "[t]he first time Peter ever mentioned the name 'Denise Cole' to me was in approximately 2006 when Peter and my mother were building the River Run house. However, Peter only referred to Denise Cole as his friend or his 'hiking friend.' " CP at 380.

¶8 Ms. Kelly also filed several declarations suggesting that Mr. Moesslang gave Ms. Kelly the Spokane house. Dr. Peter Holtappels, a friend from Germany, declared:

It was not until late 2008 or early 2009 that Peter Moesslang mentioned the possibility of a separation between himself and Bette Lyn Kelly during one of his visits to Hamburg. 'BL has difficulty growing old' was the reason given. When Peter Moesslang realized that my wife reacted strongly to this apparent lack of tact, [however,] he confirmed [that] he had given her a house next to Spokane. Needless to say [that] he never mentioned any other women.

CP at 384. Tom Sanner and Tim Murphy also filed declarations stating that Ms. Kelly had lived alone in the Spokane house since 2006.

¶9 The court granted summary judgment based on the statute of limitations. As an alternative basis for dismissing the claim, the court concluded that the claims were also barred by the doctrine of laches.

¶10 The court gave Ms. Kelly leave to amend her complaint to include any other equitable claims. Ms. Kelly filed an amended complaint. The allegations were almost identical to those in the first, but the amended complaint did add promissory estoppel and part performance. The court dismissed these claims after concluding that they were barred by the statute of frauds. The court ordered that Ms. Kelly be ejected from the Spokane property. Mr. Moesslang moved for CR 11 sanctions because of alleged misrepresentations in Ms. Kelly's affidavits. The court ultimately awarded attorney fees and sanctions to Mr. Moesslang. Ms. Kelly appeals.

## DISCUSSION

STATUTE OF LIMITATIONS—COMMITTED INTIMATE RELATIONSHIP

¶11 Ms. Kelly contends that property acquired during a CIR is analogous to community property acquired during a marriage. She argues that like in a marriage, the parties to a CIR have a "present, undivided and fully vested interest" in the property acquired. Br. of Appellant at 25. And so the court's assumption that the cause of action here accrued

when the CIR ended is wrong. She analogizes the situation here to a defunct marriage in which parties hold property as tenants in common. In a defunct marriage, no cause of action accrues until one spouse ousts the other and adversely possesses their jointly owned property. According to Ms. Kelly, she timely brought her claim because she did so within a year of Mr. Moesslang ousting her from the Spokane house.

¶12 Mr. Moesslang responds that Ms. Kelly's claim (that they were in a CIR that bestowed certain property rights on her) is a claim in equity for equitable relief. He argues that a claim for equitable relief must be filed within three years after it accrues and that the cause of action accrued when she knew the facts needed to establish her claim. Here, Ms. Kelly knew those facts no later than 1999 but did not sue until October 9, 2009. According to Mr. Moesslang, Ms. Kelly's claim is therefore untimely.

¶13 Whether the court properly granted summary judgment is a question of law that we will review de novo. *Crownover v. Dep't of Transp.*, 165 Wn. App. 131, 141, 265 P.3d 971 (2011) (citing *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002)), *review denied*, 173 Wn.2d 1030 (2012). We pass on whether the pleadings, affidavits, depositions, and admissions show genuine issues of material fact. *Vasquez v. Hawthorne*, 145 Wn.2d 103, 106, 33 P.3d 735 (2001). The moving party must show that the court could reach only one conclusion after considering all the facts and reasonable inferences from those facts. *Id.* A motion for summary judgment based on a statute of limitations "should be granted only if the record demonstrates that there is no genuine issue of material fact as to when the statutory period commenced." *Zaleck v. Everett Clinic*, 60 Wn. App. 107, 110, 802 P.2d 826 (1991).

¶14 The parties ask us to resolve when the statute begins to run on a CIR claim. The development of the law governing CIRs adds some context and is helpful to our discussion of the nature of these relationships and their legal consequences.

¶15 The CIR doctrine is a judicially created doctrine used to resolve the property distribution issues that arise when unmarried people separate after living in a marital-like relationship and acquiring what would have been community property had they been married. *Vasquez*, 145 Wn.2d at 109 (Alexander, C.J., concurring); William A. Reppy, Jr., *Choice of Law Problems Arising When Unmarried Cohabitants Change Domicile*, 55 SMU L. Rev. 273, 278 (2002). It uses "a three-prong analysis for disposing of property when a [CIR] terminates." *In re Pennington*, 142 Wn.2d 592, 602, 14 P.3d 764 (2000).

¶16 The first prong is whether a CIR existed. *Connell v. Francisco*, 127 Wn.2d 339, 349, 898 P.2d 831 (1995). A CIR is a "stable, marital-like relationship where both parties cohabit with knowledge that a lawful marriage between them does not exist." *Id.* at 346 (citing *In re Marriage of Lindsey*, 101 Wn.2d 299, 304, 678 P.2d 328 (1984)). Whether a particular relationship is a committed intimate one depends on the facts of each case. *Id.* We consider five nonexclusive factors: (1) continuous cohabitation, (2) duration of the relationship, (3) purpose of the relationship, (4) pooling resources and services for joint projects, and (5) the intent of the parties. *Id.* If the court determines that there is a CIR, then it moves to the second and third steps of the analysis: evaluate the interest each party has in the property acquired during the relationship and then make a "just and equitable division of such property." *Id.* at 349.

¶17 CIR proceedings have developed to divide property acquired by unmarried cohabiting partners. Historically, the courts presumed that property acquired by unmarried cohabitants belonged to whoever held title to the property. *Id.* at 347 (citing *Creasman v. Boyle*, 31 Wn.2d 345, 356, 196 P.2d 835 (1948), *overruled by Lindsey*, 101 Wn.2d 299). This is known as the *"Creasman* presumption." *Id.* This presumption, however, often led to inequitable results and so the courts created exceptions to avoid a sometimes harsh re-

sult. *Id.* Ultimately, the Supreme Court overruled *Creasman* in *Lindsey*, 101 Wn.2d at 304. It replaced the *Creasman* presumption with a rule "that courts must 'examine the [CIR] and the property accumulations and make a just and equitable disposition of the property.' " *Id.* (quoting *Latham v. Hennessey*, 87 Wn.2d 550, 554, 554 P.2d 1057 (1976) and citing RCW 26.09.080).

¶18 *Lindsey* solved the problem created by *Creasman*, but it created another analytical problem by relying on RCW 26.09.080 for authority. RCW 26.09.080 directs the court in a dissolution proceeding to dispose "of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors." In *Connell v. Francisco*, we concluded that the court should apply RCW 26.09.080 to CIRs by making a just and equitable division of all separate and joint property. 74 Wn. App. 306, 317, 872 P.2d 1150 (1994), *aff'd in part, rev'd in part*, 127 Wn.2d 339. The Supreme Court clarified that "the laws involving the distribution of marital property do not directly apply to the division of property following a [CIR]. Washington courts may look toward those laws for guidance." *Connell*, 127 Wn.2d at 349.

¶19 *Connell* and *Pennington* highlighted that the treatment of property acquired during a CIR must strike a balance. On one hand, the *Connell* court said that "all property acquired during a meretricious relationship is presumed to be owned by both parties." *Id.* at 351. And it explained that without this presumption of joint ownership, the burden of proof would be put on the non-title-holder, effectively overruling *Lindsey* and reinstating *Creasman*. *Id.* at 350. On the other hand, *Connell* said that "[a CIR] is not the same as a marriage." *Id.* at 348 (citing *Davis v. Emp't Sec. Dep't*, 108 Wn.2d 272, 278-79, 737 P.2d 1262 (1987)). And in *Pennington*, the court explained that "[t]he use of the term 'marital-like' is a mere analogy because defining meretricious relationships as related to marriage

would create a de facto common-law marriage, which this court has refused to do." 142 Wn.2d at 601. In that vein, *Pennington* emphasized that the presumption that property acquired during a CIR belongs to both parties is rebuttable and that the courts look to RCW 26.09.080 only for *guidance* once a party has failed to rebut that presumption. *Id.* at 602.

¶20 No cases directly address when a CIR action accrues, but it seems to us that an action to divide assets acquired during a CIR accrues when a CIR ends. "A cause of action accrues when a party has the right to seek relief in the courts." *Crownover*, 165 Wn. App. at 141. In other words, it " 'accrues when the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action.' " *Id.* (internal quotation marks omitted) (quoting *Gilbert v. Sacred Heart Med. Ctr.*, 127 Wn.2d 370, 381, 900 P.2d 552 (1995) (Durham, C.J., dissenting)). The courts created the equitable doctrine of CIR to dispose of property "when unmarried persons . . . separate" or "when a [CIR] terminates." *Vasquez*, 145 Wn.2d at 109 (Alexander, C.J., concurring); *Pennington*, 142 Wn.2d at 602. And the courts have applied the doctrine only to cases after the parties have ended their relationship, either by choice or death. *See Olver v. Fowler*, 161 Wn.2d 655, 168 P.3d 348 (2007) (addressing the claims of each partner's estate after the partners died in a car crash); *Soltero v. Wimer*, 159 Wn.2d 428, 150 P.3d 552 (2007) (addressing action brought after Mr. Wimer terminated the relationship via letter); *In re Marriage of Muhammad*, 153 Wn.2d 795, 108 P.3d 779 (2005) (addressing, in a dissolution, division of husband's pension accrued during CIR prior to the parties' marriage); *Vasquez*, 145 Wn.2d 103 (addressing Mr. Vasquez's right to Mr. Schwerzler's estate assets when the two cohabitated until Mr. Schwerzler's death); *Pennington*, 142 Wn.2d 592 (addressing whether two former couples had CIRs after the couples broke up for the last time); *Connell*, 127 Wn.2d 339

(addressing division of property after the parties broke up). A plaintiff therefore knows or should know the relevant facts to establish a CIR claim when the CIR ends.

¶21 Mr. Moesslang argues that the three-year statute of limitations should apply because CIR claims are equitable claims and the courts of this state have held that other equitable claims, including unjust enrichment, are limited to three years. Br. of Resp't at 21. The three-year statute of limitations applies to actions "upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument." RCW 4.16.080(3).

¶22 RCW 4.16.080(3) has been applied to a variety of equitable claims. *See Davenport v. Wash. Educ. Ass'n*, 147 Wn. App. 704, 197 P.3d 686 (2008) (applying to unjust enrichment case); *Goodman v. Goodman*, 128 Wn.2d 366, 907 P.2d 290 (1995) (applying to constructive trust case). And as we read *Pennington*, it supports Mr. Moesslang's argument that a claim of a CIR should be characterized the same as claims for unjust enrichment or other equitable claims. This is because *Pennington* reinforces the notion that CIR claims sound in equity. The *Pennington* court noted that "[w]e have never divorced the [CIR] doctrine from its equitable underpinnings." 142 Wn.2d at 602 (citing *Connell*, 127 Wn.2d at 349). It went on to reaffirm that " 'property acquired during the relationship should be before the court so that one party is not unjustly enriched at the end of such a relationship.' " *Id.* (emphasis omitted) (quoting *Connell*, 127 Wn.2d at 349). In *Pennington*, the court ultimately concluded that no CIR existed because the "equitable principles recognized in *Connell*" were not satisfied. *Id.* at 607. It also concluded that it could not justify equitably dividing assets because there was no showing that the party seeking division of those assets contributed anything to acquire those assets. *Id.* at 605. Simply put, the court concluded that one party had not been unjustly enriched at the expense of another.

¶23 Ms. Kelly argues that the applicable statutes of limitations are those applied to adverse possession. Br. of Appellant at 29. She implies that her cause of action did not accrue until Mr. Moesslang ousted her from the Spokane house. Br. of Appellant at 25, 29. This approach requires that we accept her essential premise that this is like a marriage, with a resulting community property interest, so that the parties hold any property acquired as tenants in common after their relationship ends. Br. of Appellant at 25-29; *see Ambrose v. Moore*, 46 Wash. 463, 90 P. 588 (1907); *Peters v. Skalman*, 27 Wn. App. 247, 617 P.2d 448 (1980). The court in *Ambrose* explained this principle:

> Where no disposition of the property rights of the parties is made by the divorce court, . . . their joint or community property must become common property. After the divorce there is no community, and in the nature of things there can be no community property. The divorce does not vest or divest title, the title does not remain in abeyance, and it must vest in the former owners of the property as tenants in common.

46 Wash. at 465-66. Where spouses or ex-spouses are treated as tenants in common, one spouse must oust the other from their joint property. *See Peters*, 27 Wn. App. at 251-54. If that happens, the ousted spouse must exercise his or her property rights within the applicable statute of limitations. *See id.* In the case of personal property, the three-year statute of limitations would apply. *See* RCW 4.16.080(2). In the case of real property, the 10-year statute of limitations would apply. *See* RCW 4.16.020(1). Ms. Kelly argues that Mr. Moesslang has failed to prove that he ousted Ms. Kelly and, if her eviction from the Spokane house constitutes ouster, then she has filed her case well within either the 3- or 10-year statutes of limitation. Br. of Appellant at 29. We fundamentally disagree with her approach for a number of reasons.

¶24 First, marriage and CIRs are not the same. *Connell*, 127 Wn.2d at 348 (citing *Davis*, 108 Wn.2d at 278-79). CIRs may be "marital-like" but they are not marriages. *See*

*Pennington*, 142 Wn.2d at 601. "Marital-like" is simply an attempt by the courts to describe the long-term, committed nature of a CIR. *See id.* Our Supreme Court has compared community property and property acquired during a CIR. However, that analogy followed only after a threshold determination that a CIR existed and the respondent failed to rebut the presumption that property acquired during the relationship was jointly owned. *See id.* at 602. It is inappropriate to ascribe common law, marriage-related property rights to those who have not timely proved that there is a CIR in the first place.

¶25 Second, Ms. Kelly's argument presumes that the property at issue is jointly owned. Ms. Kelly relies on *Olver*[1] for the proposition that those in a CIR have a "present, undivided and fully vested interest in each and every item of community property." Br. of Appellant at 25; Reply Br. of Appellant at 1. But, again, this presumption follows only from a determination or agreement that the CIR existed in the first place. *Connell*, 127 Wn.2d at 349. In *Olver*, the estates of deceased partners did not dispute that there was a CIR. 161 Wn.2d at 670. But here there is no finding that a CIR existed. And there can be, therefore, no finding that Ms. Kelly jointly owned any of the property at issue. Ms. Kelly does not need to be ousted from property that she does not own.

¶26 We conclude that the equitable doctrine of CIR is subject to a three-year statute of limitations. A party must sue to establish that the relationship existed within three years of the end of the relationship.

ISSUES OF FACT

¶27 Mr. Moesslang's motion for summary judgment should have been granted if there are no genuine issues of material fact as to when Ms. Kelly's cause of action

[1] 161 Wn.2d at 670 (citing *Lyon v. Lyon*, 100 Wn.2d 409, 413, 670 P.2d 272 (1983)).

accrued. *See Zaleck*, 60 Wn. App. at 110. The cause of action needed to accrue on October 9, 2006 or later for her action to be timely. A party cannot create genuine issues of material fact by "[m]ere allegations, argumentative assertions, conclusory statements, and speculation." *Greenhalgh v. Dep't of Corr.*, 160 Wn. App. 706, 714, 248 P.3d 150 (2011). And a party cannot create an issue of material fact by filing an affidavit that contradicts the party's prior statements without explanation. *See Selvig v. Caryl*, 97 Wn. App. 220, 225, 983 P.2d 1141 (1999) (rejecting affidavit that contradicts prior deposition testimony); *Dep't of Labor & Indus. v. Kaiser Aluminum & Chem. Corp.*, 111 Wn. App. 771, 778, 48 P.3d 324 (2002) (rejecting affidavit that contradicts prior admissions made through interrogatories). The cases cited involve sworn deposition testimony or interrogatories that were later contradicted by an affidavit in opposition to a summary judgment motion. Insignificant contradictions are, however, not enough to warrant striking an affidavit. *Sun Mountain Prods., Inc. v. Pierre*, 84 Wn. App. 608, 618, 929 P.2d 494 (1997). Here we are presented with Ms. Kelly's uncontroverted and unrebutted e-mails that were attached to a sworn declaration. *See* ER 1007.

¶28 Here, Mr. Moesslang provided evidence tending to show that there was no CIR with Ms. Kelly beginning in 1999. He provided records supporting his declaration that he had been in a serious relationship with Ms. Cole since 1999. He also put into evidence e-mails spanning from December 22, 2003 to November 8, 2005 showing that Ms. Kelly was well aware of Mr. Moesslang's relationship with Ms. Cole. Her e-mails also show that Ms. Kelly considered herself "single."

¶29 Ms. Kelly needed to show that she was in a CIR with Mr. Moesslang between November 5, 2005 and October 9, 2006. She provided only one piece of evidence on this question. She says in an affidavit that she was "shocked and horrified" to learn of Mr. Moesslang's affair with Ms. Cole while Ms. Kelly and Mr. Moesslang were "living as a

family." Perhaps she was shocked and horrified that Ms. Cole and Mr. Moesslang had been dating for longer than she knew, but Ms. Kelly's own e-mails admit and unequivocally show that she had known about the relationship since 2003. This declaration does not create a genuine issue of material fact. *See Greenhalgh*, 160 Wn. App. at 714; *Selvig*, 97 Wn. App. at 225. We conclude then that the court properly dismissed Ms. Kelly's suit to establish her CIR with Mr. Moesslang.

Fees and Costs Based on Intransigence

¶30 Whether there is a statutory, contractual, or equitable basis for an award of attorney fees is a question of law that we review de novo. *Gander v. Yeager*, 167 Wn. App. 638, 282 P.3d 1100 (2012). We review the reasonableness of an attorney fees award, including CR 11 sanctions, for abuse of discretion. *Skimming v. Boxer*, 119 Wn. App. 748, 754, 82 P.3d 707 (2004).

¶31 In awarding attorney fees and sanctions, the court here considered the "need, ability, and intransigence" of the parties. CP at 1046. The court went on to outline Ms. Kelly's intransigence, including (1) filing an amended complaint alleging a cause of action nearly identical to the one the court had rejected and that realleged facts that were "blatantly false" or "not candid," (2) her refusal to move out of the Spokane house because the court's decision was not captioned "Order," and (3) failing to bring to the court's attention a lis pendens at a hearing on Mr. Moesslang's motion to dismiss despite the lis pendens being filed three days earlier. CP at 1047-48.

¶32 "[A]ttorney fees may be awarded only when authorized by a private agreement, a statute, or a recognized ground in equity." *Fisher Props., Inc. v. Arden-Mayfair, Inc.*, 106 Wn.2d 826, 849-50, 726 P.2d 8 (1986). The court may award attorney fees in a dissolution proceeding "after considering the financial resources of both parties." RCW 26.09.140. Washington courts have recognized intran-

sigence as a basis for attorney fees in dissolution proceedings. *In re Marriage of Crosetto*, 82 Wn. App. 545, 564, 918 P.2d 954 (1996). "Intransigence" may be shown by "litigious behavior, bringing excessive motions, or discovery abuses." *In re Marriage of Wallace*, 111 Wn. App. 697, 710, 45 P.3d 1131 (2002). Washington courts have also used the phrase to describe parties motivated by their desire to delay proceedings or to run up costs. *See id.* (citing *Gamache v. Gamache*, 66 Wn.2d 822, 829-30, 409 P.2d 859 (1965); *Eide v. Eide*, 1 Wn. App. 440, 445-46, 462 P.2d 562 (1969)).

¶33 Attorney fees may be awarded as part of a CR 11 sanction. The goal of CR 11(a) is to prevent baseless filings and filings made for improper purposes. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 217, 829 P.2d 1099 (1992). If a party engages in such conduct, "the court . . . may impose . . . an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee." CR 11(a). A baseless filing is one not supported by the facts or existing law. *Bryant*, 119 Wn.2d at 217. To award sanctions for a baseless filing, the court must evaluate " 'whether a reasonable attorney in like circumstances could believe his or her actions to be factually and legally justified' " and whether it is " 'patently clear that a claim has absolutely no chance of success.' " *MacDonald v. Korum Ford*, 80 Wn. App. 877, 884, 912 P.2d 1052 (1996) (internal quotation marks omitted) (quoting *Bryant*, 119 Wn.2d at 220; *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986)). The filing must show that the author failed to do reasonable prefiling research regarding the filing's basis. *Bryant*, 119 Wn.2d at 217. And the court must conclude that the filing had no chance of success. *MacDonald*, 80 Wn. App. at 884.

¶34 Although Mr. Moesslang moved for attorney fees as CR 11 sanctions, the court here awarded attorney fees based on "need, ability, and intransigence." We have

concluded this is not a dissolution proceeding. We then reverse the court's award of attorney fees based on any need or ability.

¶35 And, as for CR 11 sanctions based on intransigence, we conclude that the issues here are novel, complex, and no doubt charged with a bit of emotion. We are uncomfortable affirming an award of fees and costs given this record.

¶36 We therefore affirm the summary dismissal of the suit and reverse the award of fees.

KORSMO, C.J., and KULIK, J., concur.

Review denied at 176 Wn.2d 1018 (2013).