[No. 31299-2-III.   Division Three.   October 7, 2014.]

*In the Matter of the Marriage of* DAWN D. NEUMILLER, *Appellant*, and STEVEN R. NEUMILLER, *Respondent*.

*Jason R. Nelson*, for appellant.

*Martin A. Peltram*, for respondent.

¶1 Korsmo, J. — In a marriage dissolution proceeding, does one party have to plead the existence of a premarital committed intimate relationship in order to consider that relationship when characterizing property as separate or community? Appellant Dawn Neumiller appeals from the dissolution of her marriage to respondent Steven Neumiller, alleging several errors at trial. We agree only with her contention that the trial court should have considered *evidence* of the existence of a committed intimate relationship before characterizing the two most significant assets before the court and remand for the trial court to do so. In all other regards we affirm.

## FACTS

¶2 The Neumillers met in 1996; both had previously been married and had children from their previous relationships. Ms. Neumiller lived with her children in a home on West 10th Avenue in Spokane that was owned by her

parents. She had rented the home from her parents since 1990 under what she described as a "rent to own" agreement.

¶3 Ms. Neumiller became pregnant in 1998 by Mr. Neumiller, and he moved into the 10th Avenue home at that time and took over making the monthly house payments. The couple's son was born in November 1998. In 1999, Mr. Neumiller purchased the 10th Avenue house by taking out a mortgage to finance it after first selling his own home.[1] The mortgage was solely in Mr. Neumiller's name.

¶4 The couple's second child, a daughter, was born in November 2000. The mother cared for the children and did not have an occupation outside of the home except for some occasional sewing work. The father worked from the house as a consultant and grant writer. The couple married in January 2005. As before the marriage, the finances were largely kept separate, with Mr. Neumiller managing his separate assets and also paying any community costs and debts.

¶5 Ms. Neumiller initially filed for dissolution of the marriage in 2009 and moved out of the 10th Avenue house with the children that October. The dissolution petition was dismissed the following year. Ms. Neumiller filed a new dissolution petition on May 26, 2011. It asserted that the parties had married in Idaho on January 28, 2005, and had separated October 20, 2009. Mr. Neumiller turned 62 in October 2011 and took early retirement. He began receiving Social Security payments and wound down his business affairs. Each of the children also began to receive a monthly Social Security check.

---

[1] Although the trial court commented in its oral remarks that Mr. Neumiller had used the proceeds from the sale of his house to help fund the purchase of the 10th Avenue house, the testimony was to the contrary. Ms. Neumiller testified that Mr. Neumiller lost money on the sale of his house, while Mr. Neumiller testified that the funds used to purchase the 10th Avenue house came from the mortgage. It may be that one of the exhibits addressed this issue, but none of them have been made part of the record on appeal.

¶6 Ms. Neumiller's original counsel was disbarred. She proceeded pro se for a while, but a new attorney took over shortly before the scheduled trial date. The parties filed a joint trial management report in which the wife claimed the 10th Avenue house was community property, while Mr. Neumiller alleged it was his personal property. Ms. Neumiller contended that the American Funds retirement account, valued at nearly $71,000, also was community property, while Mr. Neumiller contended that the account was his separate property.

¶7 The matter proceeded to trial. On the day of trial, the husband filed his response to the petition and the wife filed an amended petition. The amended petition listed the separation date of the couple as May 26, 2011, the date that the original 2011 dissolution petition was filed. The amended petition again stated that the couple had married in Idaho on January 28, 2005, but included an additional sentence: "The parties cohabited in a marriage like relationship since the fall of 1998." Clerk's Papers at 257.

¶8 Mr. Neumiller's counsel moved in limine to prevent Ms. Neumiller from presenting evidence relating to a committed intimate relationship since she had not pleaded the matter in her original petition. The trial court deferred ruling on the motion and permitted the parties to testify as they wished. Ms. Neumiller testified concerning the couple's premarriage relationship and asked to be awarded half of the equity in the house and half of the American Fund account. After Ms. Neumiller rested her case, Mr. Neumiller moved for a directed verdict on the committed intimate relationship matter. The court reserved its ruling.

¶9 Trial concluded the following day. The parties returned to court five weeks later to learn the judge's decision. The trial court declined to entertain the committed intimate relationship issue, reasoning that it had been raised "way too late in the game for the Court to consider it here." Report of Proceedings at 219-20. The court characterized both the house and the American Fund account as

Mr. Neumiller's separate property. The court awarded each party its separate property. The community property, valuing less than $13,000 and consisting primarily of vehicles, was awarded to the person in possession of the item.[2] Mr. Neumiller also was assigned the bulk of the community debt, including nearly $22,000 owed on a line of credit.

¶10 After entry of the decree of dissolution, Ms. Neumiller then appealed to this court.

## ANALYSIS

¶11 Ms. Neumiller raises four contentions in this appeal. We initially address her argument that the court erred in not considering the committed intimate relationship in its characterization of the nature of the house and the American Fund account. She also argues that the court erred in determining that the couple separated in 2009 rather than 2011, in not imputing additional income to Mr. Neumiller after his retirement, and in not awarding her attorney fees at trial. Mr. Neumiller argues that he should receive attorney fees for responding to a frivolous appeal. We address the remaining issues in the order stated.

### Evidence of Committed Intimate Relationship

¶12 Mr. Neumiller contends that Ms. Neumiller had to plead the committed intimate relationship issue in a timely fashion and that the trial court acted within its case management authority in declining to consider the late issue. Ms. Neumiller argues there is no pleading requirement for evidentiary consideration of the existence of a committed intimate relationship in a marriage dissolution proceeding. We agree with Ms. Neumiller and remand for consideration of this evidence.

---

[2] Ms. Neumiller received approximately $8,200, less nearly $6,700 in community debt, while Mr. Neumiller received approximately $4,600 in community property, but his share of the community debt reduced his position to negative $15,381.

¶13 The husband properly notes that trial courts are accorded great discretion in family law matters due to the need for finality and certainty. *E.g.*, *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985). He correctly argues that this standard governs all of Ms. Neumiller's issues. Whether or not to allow an amendment to the pleadings rests with the discretion of the trial court. *E.g.*, *Wilson v. Horsley*, 137 Wn.2d 500, 505, 974 P.2d 316 (1999). The distribution of property and debt is reviewed for manifest abuse of discretion. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005); *Baird v. Baird*, 6 Wn. App. 587, 591, 494 P.2d 1387 (1972). Whether or not to award a party maintenance or attorney fees likewise is reviewed for abuse of discretion. *In re Marriage of Terry*, 79 Wn. App. 866, 869-71, 905 P.2d 935 (1995).

¶14 In turn, discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Discretion also is abused when the court uses an incorrect legal standard. *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995).

¶15 RCW 26.09.080 requires consideration of four factors[3] in reaching a "just and equitable" property division. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242-43, 170 P.3d 572 (2007). A deferential standard of review is applied to the trial court's consideration of these factors because it is "in the best position to assess the assets and liabilities of the parties" in order to determine what constitutes an equitable outcome. *In re Marriage of Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999). Although all property is before the court for distribution, characterization of the property as community or separate is a necessary step to take before making a distribution. *Id.* at 766; *Baker v.*

---

[3] Those factors include the nature and extent of (1) the community property and (2) the separate property of the parties, (3) the duration of the marriage, and (4) the economic circumstances of the parties at the time of the property division. RCW 26.09.080.

*Baker*, 80 Wn.2d 736, 745, 498 P.2d 315 (1972). Appellate courts review property characterization rulings de novo. *In re Marriage of Chumbley*, 150 Wn.2d 1, 5, 74 P.3d 129 (2003).

¶16 Somewhat analogous standards apply to characterizing and distributing property following the end of a committed intimate relationship. This division of property must be just and equitable. *In re Marriage of Lindsey*, 101 Wn.2d 299, 304, 678 P.2d 328 (1984). Once the trial court makes a determination that a committed intimate relationship exists, it then (1) evaluates the interest each party has in the property acquired during the relationship and (2) distributes the property in a just and equitable manner. *Id.* The distribution does not have to be equal. *In re Marriage of Washburn*, 101 Wn.2d 168, 179, 677 P.2d 152 (1984).

¶17 Various presumptions aid courts in determining whether property is community or separate. *In re Estate of Borghi*, 167 Wn.2d 480, 483-84, 219 P.3d 932 (2009) (plurality opinion). The date of acquisition is the primary determinant. *Id.* at 484 (citing Harry M. Cross, *The Community Property Law in Washington (Revised 1985)*, 61 WASH. L. REV. 13, 39 (1986)). Once the characterization is made, the property is presumed to retain that character until such time as it has been overcome with evidence of an intent to change that characterization. *Id.* at 484-85, 491-92. The presumption can only be overcome by clear and convincing evidence. *Id.* at 485 n.4. There is a "weak presumption" in favor of community property that exists until a presumption in favor of community or separate property arises. *State ex rel. Marshall v. Superior Court*, 119 Wash. 631, 637, 206 P. 362 (1922). This weak presumption gives way upon a preponderance of the evidence. *Id.*

¶18 If property is acquired when a party is involved in a committed intimate relationship, it is presumed to be jointly owned. *In re Estate of Langeland*, 177 Wn. App. 315, 324-25, 312 P.3d 657 (2013). This presumption can be overcome by clear and convincing evidence that shows the

separate nature of the funds used to acquire the property. *Id.* at 325.

¶19 We have stated these standards at some length because the committed intimate relationship argument was critical to the characterization of the house and the American Fund account as either community-like or separate property. The house was acquired during the period of time after Ms. Neumiller alleged the committed relationship began; she also alleged that Mr. Neumiller made deposits to the account during that time period.

¶20 The trial judge accepted Mr. Neumiller's argument that the committed intimate relationship claim was raised too late by the amended pleading. This argument implicitly assumed that the existence of a committed intimate relationship needed to be pleaded before the trial court could consider its existence. While that certainly must be the case when a proceeding is instituted to distribute property acquired during a committed intimate relationship, we do not believe that it needs to be pleaded when it is merely an evidentiary fact in a marriage dissolution proceeding. Like any evidence, or theory of a case, it typically would be disclosed in pretrial discovery, but evidence does not need to be included in the pleadings before it is admissible at trial.

¶21 A trial court has authority to exclude from trial any evidence that was willfully not disclosed during discovery if there was substantial prejudice from the violation. *In re Estate of Foster*, 55 Wn. App. 545, 548, 779 P.2d 272 (1989). If this had been such a situation, we would review for abuse of the trial court's discretion. *Id.* However, that is not what happened here. Mr. Neumiller did not claim a discovery violation. Rather, he sought exclusion on the basis that the amended petition arrived too late in the process. In other words, the committed intimate relationship needed to be pleaded in order to be considered. By agreeing with that proposition, the trial court erred as a matter of law and necessarily abused its decision. *Rundquist*, 79 Wn. App. at 793.

¶22 Here, there should have been no surprise to Mr. Neumiller what Ms. Neumiller was hoping to accomplish. The facts concerning the couple's premarriage relationship were well known to both. He moved into her home, bought the house from her parents, and conceived and raised two children there for several years before marrying. She claimed in the joint trial report that the house and the American Fund account were community property rather than simply property to which the community might have some interest. Since property is characterized at the time of acquisition, Mr. Neumiller was on notice that the couple's relationship at that time was at issue because she did not agree it was his separate property.

¶23 Ms. Neumiller presented sufficient interest of a marriage-like relationship for the court to consider the matter in its characterization of the property at issue. With respect to the house, Ms. Neumiller established that it was purchased while the couple lived in it with one child. On the basis of the evidence, the trial court could find that the house was community-like property since it was acquired during a marriage-like relationship. With respect to the American Fund account, the evidence established that it was created four years before the committed intimate relationship might have arisen. There was testimony from Mr. Neumiller that only $8,000 was added to the fund between 1998 and 2002, and nothing after that point. Thus, Ms. Neumiller failed to show that this fund was community-like property. At most, the evidence would justify a community lien on a small portion of the fund contributed during the committed intimate relationship.

¶24 We remand for the court to consider the evidence of the existence of a committed intimate relationship and, if existent at the time, its effect on the characterization of these two pieces of property. *See Lindsey*, 101 Wn.2d at 307. The court may reopen the property distribution if it should find that either property is not solely Mr. Neumiller's. *Id.*

¶25 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the

924

Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

SIDDOWAY, C.J., and BROWN, J., concur.