IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In Matter of the Committed Intimate Relationship of | ) ) ) | No. 79509-1-I |
| GUMERSINDO QUIN CAMPOS, | ) ) | DIVISION ONE |
| Respondent, | ) ) | UNPUBLISHED OPINION |
| and | ) ) ) | |
| MARIA A. PENA AVILA, | ) ) ) | |
| Appellant. | ) ) | |

SMITH, J. — Maria Pena Avila appeals an order distributing property and debts acquired and incurred during a committed intimate relationship (CIR) between Pena and Gumersindo Quin Campos.[1] She contends that the trial court erred by not dismissing Quin's CIR petition as time barred. She contends further that the trial court's property distribution was not just and equitable and that the trial court erred by denying her motion for reconsideration.

We hold that the trial court did not err by concluding that Quin's CIR petition was timely. With regard to the property distribution, we conclude that the trial court erred by failing to characterize the property and debts at issue before distributing them and by failing to enter sufficient findings. We hold further that

---

[1] We refer to the parties as Pena and Quin, respectively, for consistency with their briefs.

Citations and pin cites are based on the Westlaw online version of the cited material.

the record in this case would not, in any event, have supported findings to sustain the court's ultimate conclusion that its distribution, which awarded Quin all of the assets at issue but ordered Pena to pay all of the debts, was just and equitable. For these reasons, we affirm the trial court's conclusion that Quin's petition was timely, reverse the trial court's property distribution, and remand to the trial court to characterize and distribute the property and debts acquired and incurred during the CIR. On remand, the trial court will conduct further proceedings consistent with this opinion.

FACTS

Quin and Pena began a dating relationship in 2004 and moved into an apartment together in 2005. Some six years later, the couple and Pena's children from an earlier relationship moved into a house in SeaTac. The house had been purchased in Pena's name in 2011, and only Pena's name was on the mortgage.

In 2012, Pena became pregnant with the couple's son, J.L.Q.P., who was born in October of that year.

In August 2016, Pena traveled to Mexico with J.L.Q.P. According to Pena's later declaration, when she returned in late September, Quin had changed the locks on the SeaTac house. According to Quin, Pena then "hired an attorney to initiate an unlawful detainer proceeding against [him]."

About a month later, in November 2016, Quin filed a CIR petition.[2] He

---

[2] Quin's petition was styled as a "Petition for *Dissolution* of Committed Intimate Relationship." (Emphasis added.) But because the parties were not

alleged that the parties began a CIR on June 28, 2005, and that the CIR ended on August 19, 2016, when "[o]ne of us moved to a separate household." Quin asked the court to approve a parenting plan and a child support order regarding J.L.Q.P. He also asked the court "to assign the [house] as my separate property, and order [Pena] to sign [a] Quit Claim Deed transferring her interest." Quin alleged that "[Pena] sold me her share in the [SeaTac house] in July 2016 for $8,000, which I pa[id] to her with a check." A check for $8,000, made payable to Pena and dated July 6, 2016, was later admitted at trial.

In response to Quin's petition, Pena declared that she purchased the SeaTac house and "made the down[ ]payment of $8,000 entirely from funds [she] had saved up." According to Pena, "[Quin] contributed nothing to the down payment." Pena acknowledged receiving $8,000 from Quin in July 2016, but declared that it was to repay amounts that she had loaned to Quin and sent to Quin's relatives in Mexico. Pena also declared that after she and Quin moved into the SeaTac house, they divided household expenses equally, as they had while living in an apartment together. Finally, she declared that her relationship with Quin ended in 2012, but she and Quin "continued residing together in the house and dividing expenses equally to save money." In her response to Quin's petition, Pena also raised the statute of limitations as an affirmative defense.

In February 2017, the trial court entered a temporary order in which it ordered that Pena could stay in the SeaTac house and directed Quin to move out

---

married, the legal term "dissolution" is inapplicable. Therefore, we refer to Quin's petition as a CIR petition.

by March 10, 2017. The parties later resolved parenting and child support issues under a CR 2A agreement.

A bench trial was held on Quin's CIR petition in November 2018. At the beginning of trial, the court indicated that it would "reserve on the statute-of-limitations question" until after it heard the testimony. At trial, Quin acknowledged that his name was not on the title to the SeaTac house. Nevertheless, according to Quin, he and Pena "split the down payment that we had to make in half." In support of this testimony, Quin introduced two Wells Fargo deposit receipts from September 2011—one for $5,900 and another for $100. Quin testified that these deposits, totaling $6,000, were "the money that [he] gave [Pena] so that she would deposit that amount in her account, and this was for the purposes of the down payment." Pena, by contrast, testified that she never received the $6,000 shown on the Wells Fargo receipts, that the amount of the down payment was $8,000, and that she made the entire down payment herself with money she had saved.

Pena testified, with regard to the couple's expenses after they moved into the SeaTac house, that Quin would contribute the monthly mortgage payment—then approximately $1,275—and Pena "would cover the bills and the food and any other expenses for the house." Quin, by contrast, testified that he contributed to the household expenses "[a]ll the time," including the expenses for two of Pena's children who were not Quin's. And Quin's niece testified that Quin would bring groceries into the house "all the time."

Quin also testified that in 2007, he and his brother, Martin Quin Campos

4

(hereinafter, for clarity, Martin), formed a company, Quin Construction, which they owned as equal partners. Quin Construction's 2014 and 2015 tax returns were admitted into evidence and indicated that the company netted $70,219 in income in 2014, $117,773 in 2015, and $63,355 in 2016. Quin reported his 50 percent share of these amounts as his only income on his personal tax returns. Meanwhile, Pena reported $9,917 in income in 2015.

Pena testified, with regard to Quin Construction, that she sometimes would help Quin at work sites by handing him tools or wood. She also testified that she loaned Quin and Martin $6,000 to help them when they started the company and that the $8,000 check she received from Quin in July 2016 was to repay that loan, plus an additional $2,000 she sent to Quin's family. Meanwhile, Quin testified that there never was any loan. When asked to explain the $8,000 payment he made to Pena in July 2016, Quin testified, "[S]ince all she cares about is money, she will take whatever it is." Quin also testified that Pena "never" came with him to help him on a construction site but that the company owed a debt to the Department of Labor and Industries (L&I) "because [Pena]'s son was working with [Quin]." According to Martin, the outstanding amount of the L&I debt was $48,000 at the time of trial.

With regard to the duration of Pena and Quin's relationship, Pena's daughter testified that her mother and Quin broke up in August or early September 2012, and Pena testified that she broke up with Quin in July 2012, while she was pregnant with J.L.Q.P. Pena testified that at that time, she and Quin stopped sleeping in the same bed, she moved all of her possessions

upstairs, and Quin moved all of his possessions downstairs. Meanwhile, Quin's niece testified that it was not until Quin moved out of the house, in approximately April or May 2017, that she concluded that Pena and Quin were no longer a couple. Quin himself did not provide any testimony with regard to the alleged breakup in 2012 but testified that Pena left the house in August 2016. Quin also testified that after Pena left, he completely renovated the home, including replacing the siding, the roof, the flooring, and remodeling the bathroom and kitchen. He testified that he bought the materials himself, and the trial court admitted a number of hardware store receipts, which Quin testified reflected expenses for renovating the house. On cross-examination, Quin acknowledged that he left some work unfinished because he was required to leave the house.

The trial court entered findings and conclusions and a "Final Dissolution Order" on November 20, 2018. The court found that the parties began a CIR on June 28, 2005, and that the CIR ended on August 19, 2016. The court characterized the SeaTac house as "community property,"[3] awarded it to Quin as his separate property, and ordered Pena to sign a quit claim deed to transfer the property to Quin by December 15, 2018. The court also awarded to each party the personal property then in that party's possession or control, and ordered each party to pay all debts then in that party's name. With regard to Pena's statute of limitations defense, the court stated, "[Pena] raised the issue of statute of limitations, a three year period, using the year 2012 as the dissolution of the

---

[3] Because there is no true marital community in a CIR, we presume that the court meant "community-like property."

6

CIR. The court denies this motion by the afore-designated finding [that the CIR ended on August 19, 2016]."

Pena moved for reconsideration. In her motion, she contended that the court's order "distributed the $300,000 real property in Sea-Tac to [Quin] and the $150,000 debt for the . . . property to [Pena], which is inequitable." Pena argued that she "should receive a greater than 50% share of the property" based on the income disparity between herself and Quin but that at a minimum, the house and the associated mortgage should have been divided equally. In his response to Pena's motion, Quin asked the court to "assign the family home as [Quin]'s separate property" but "giv[e Pena] her share, fifty percent (50%), of the property's equity based on the recorded value the property had with the King County Assessor's office" as of August 2016. Quin also asked the court to give him "a six month period to secure a mortgage loan to remove [Pena] from the family home's mortgage loan obligation." Quin explained that he "was not aware that the [court's] order was missing a provision that assigned the mortgage loan of the family home as [Quin]'s separate debt" until his attorney prepared his response to Pena's motion for reconsideration.

On January 2, 2019, the trial court entered an order denying Pena's motion for reconsideration. Pena appeals.

ANALYSIS

*Timeliness of Quin's CIR Petition*

Pena does not challenge the trial court's findings that a CIR existed or that it began on June 28, 2005, and thus, we accept these findings as verities.

Muridan v. Redl, 3 Wn. App. 2d 44, 57, 413 P.3d 1072, review denied, 191 Wn.2d 1002 (2018). Pena contends, however, that the court erred by finding that the parties' CIR ended in August 2016 rather than in 2012. Thus, Pena argues, the trial court also erred by concluding that Quin's CIR petition, filed in November 2018, was timely. We disagree.

"The CIR doctrine is a judicially created doctrine used to resolve the property distribution issues that arise when unmarried people separate after living in a marital-like relationship and acquiring what would have been community property had they been married." In re Kelly & Moesslang, 170 Wn. App. 722, 732, 287 P.3d 12 (2012). A petition to distribute property acquired during a CIR must be filed within three years after the CIR ends. Kelly, 170 Wn. App. at 737. The question of when a CIR ended is a question of fact. Muridan, 3 Wn. App. 2d at 56. A trial court's findings of fact will not be disturbed on appeal so long as they are supported by substantial evidence. In re Marriage of Rockwell, 141 Wn. App. 235, 242, 170 P.3d 572 (2007).

Here, Pena contends that the parties' CIR ended in July 2012. But it is undisputed that Quin and Pena had a child together in late 2012 and continued to cohabitate until August 2016. Additionally, there was evidence, even though disputed, that Quin continued to contribute to household expenses, other than just the amount of the mortgage payment, until January 2017 and that others continued to view Quin and Pena as a couple until well after 2012. See Vermette v. Andersen, 16 Wn. App. 466, 470, 558 P.2d 258 (1976) ("[S]ubstantial evidence . . . is not made any less substantial by the presence of contradictory

8

testimony.").

Furthermore, although a party to a CIR can terminate it unilaterally, he or she must do so unequivocally, in a manner understood by the other party, to trigger the statute of limitations. See In re Parentage of G.W.-F., 170 Wn. App. 631, 648-49, 285 P.3d 208 (2012) (holding that CIR ended when "one party . . . clearly demonstrated an intent to end it [and t]his intent was communicated to and understood by the other party to the relationship."). But in support of her contention that "the parties ended the relationship . . . in 2012, and moved into separate rooms on separate floors," Pena, who bears the burden of proof on this issue, relies solely on her testimony that she "broke up with" Quin in July 2012. She points to no evidence that Quin understood Pena's intent to end the relationship in 2012 and cites to no authority for the proposition that a CIR ends merely because the parties move into separate bedrooms. Cf. G.W.-F., 170 Wn. App. at 649 (pointing out that one party testified that the other party's intent to end the relationship "was 'clear to me'"); Muridan, 3 Wn. App. 2d at 61 ("The word 'intimate' in the term 'committed intimate relationship' was not intended to make *sexual* intimacy the litmus test for whether courts should equitably divide property at the end of the relationship."). For these reasons, the trial court did not err by concluding that Pena failed to satisfy her burden to prove her statute of limitations defense. See Haslund v. City of Seattle, 86 Wn.2d 607, 620-21, 547 P.2d 1221 (1976) ("Since the statute of limitations is an affirmative defense, . . . the burden was on [the party asserting the defense] to prove those facts which established the defense.").

Pena disagrees and relies on <u>Kelly</u> in support of her contention that the CIR ended in 2012. But in <u>Kelly</u>, there was evidence that the party asserting the statute of limitations defense had been in a serious relationship with a third party since 1999. 170 Wn. App. at 738. There also was evidence that by 2003, the party who filed the CIR petition was aware of that relationship and "considered herself 'single.'" <u>Kelly</u>, 170 Wn. App. at 738. In other words, there was evidence that as early as 2003, *both* parties understood that the CIR had ended. Thus, we concluded, the trial court did not err by dismissing the petition, which was not filed until 2009, as time barred. <u>Kelly</u>, 170 Wn. App. at 739. Here, unlike in <u>Kelly</u>, Pena points to no evidence that Quin understood that the CIR had ended as of 2012. Therefore, Pena's reliance on <u>Kelly</u> is misplaced.

*Property Distribution*

Pena next contends that the trial court's property distribution must be reversed because it was not just and equitable. We agree—not only because the trial court's distribution of the parties' property and debts was inequitable, but also because the trial court erred by failing to enter findings and failing to characterize the property and debts at issue before distributing them.

Once the court determines that a CIR existed, it then "evaluate[s] each party's interest in the property acquired during the [CIR]" and "make[s] a just and equitable distribution of that property." <u>In re Committed Intimate Relationship of Amburgey</u>, 8 Wn. App. 2d 779, 787, 440 P.3d 1069 (2019). We review de novo a trial court's characterization of property and debts as community-like or separate. <u>G.W.-F.</u>, 170 Wn. App. at 637-38; <u>see</u> <u>also</u> <u>Oil Heat Co. of Port</u>

Angeles, Inc. v. Sweeney, 26 Wn. App. 351, 356, 613 P.2d 169 (1980) (characterizing, as a conclusion of law, trial court's determination that debt was a separate obligation). And we review a trial court's ultimate distribution of property and debts for abuse of discretion. In re Marriage of Neumiller, 183 Wn. App. 914, 920, 335 P.3d 1019 (2014); see also Amburgey, 8 Wn. App. 2d at 788 ("[A]pplication of marriage principles by analogy applies . . . once the existence of a CIR has been established."). "A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Parenting & Support of L.H., 198 Wn. App. 190, 194, 391 P.3d 490 (2016).

The property and debts primarily at issue in this case were (1) the SeaTac house (including any equity therein), (2) the mortgage associated with the house, and (3) Quin's partnership interest in Quin Construction. The trial court awarded the house to Quin. The court then awarded to each party the personal property that he or she "now has or controls" and ordered each party to pay the debts "that are now in his/her name." The parties do not dispute that the result of the trial court's order was that Quin was awarded both the SeaTac house and his interest in Quin Construction, while Pena was ordered to pay the mortgage on the house.

To this end, and as an initial matter, CR 52 requires that "[i]n all actions tried upon the facts without a jury . . . , the court shall find the facts specially." CR 52(a)(1). "'[W]here findings are required, they must be sufficiently specific to permit meaningful [appellate] review.'" In re Dependency of A.D., 193 Wn. App.

445, 462, 376 P.3d 1140 (2016) (first alteration in original) (quoting In re Det. of LaBelle, 107 Wn.2d 196, 218, 728 P.2d 138 (1986)).  And "[f]or appellate review to be possible, a trial court's findings of fact must declare the ultimate facts that justify its conclusions."  In re Marriage of Tulleners, 11 Wn. App. 2d 358, 369, 453 P.3d 996 (2019).

The parties presented wildly contradictory testimony regarding their respective contributions toward the house purchase, the mortgage, the construction company, and the household expenses.  And the trial court ultimately concluded that its property distribution was "fair (just and equitable)."  But the court did not indicate how it resolved any of the factual disputes relevant to this ultimate conclusion, including what each party contributed and whether those contributions were community-like or separate in character.  The court also failed to make any findings with regard to the value of the house or the value of Quin's interest in Quin Construction (including the impact of the outstanding L&I obligation on that value).

Ordinarily, without these findings, we would be unable to evaluate whether the trial court's distribution of property and debts constituted an abuse of discretion and would simply remand to the trial court to enter sufficient findings.  See Tulleners, 11 Wn. App. 2d at 369 (where findings are insufficient, "an appellant is entitled to have the cause remanded so that findings adequate for review can be made.").  But in this case, it is clear even without findings that the trial court's distribution of property and debts between the parties was not just and equitable.  Specifically, and as discussed, the parties do not dispute that the

12

trial court awarded Quin all of the assets at issue while leaving Pena burdened with all of the debts. Quin points to no evidence—much less substantial evidence—that would support such a one-sided award. And having reviewed the record, we discern none. Indeed, even Quin acknowledged in his response to Pena's motion for reconsideration that the mortgage should have been "assigned . . . as [Quin's] separate debt" given that the house was awarded to him. For these reasons, we conclude that the trial court's distribution of property and debt was manifestly unreasonable and, thus, an abuse of discretion warranting reversal.

Reversal is also warranted for another independent reason, which we address to provide the trial court with additional guidance on remand.

Unlike in a marital dissolution, where both community and separate property and debts are before the court for distribution, only property and debts "that would have been characterized as community property [and debts] had the parties been married" are properly before the court for distribution following the termination of a CIR. Connell v. Francisco, 127 Wn.2d 339, 349, 898 P.2d 831 (1995). Therefore, characterizing property and debts as community-like versus separate "is a necessary step to take before making a distribution." Neumiller, 183 Wn. App. at 920.

The trial court characterized the SeaTac house as community-like but did not indicate in the record how it characterized any other property or debts, including the mortgage and Quin's interest in Quin Construction. Instead, the court's findings and conclusions refer to "[t]he community personal property,"

13

"[t]he separate personal property," "[t]he community debt," and "[t]he separate debt" without specifying what those categories include or the value of the property in each category. And the trial court did not enter any other findings from which we can infer how the trial court characterized the remaining property and debts. This, too, was reversible error because characterization is a necessary first step to determine what property is properly before the court for distribution following the termination of a CIR.

To this end, "[p]roperty and income acquired during a CIR is presumed to be community-like property." Muridan, 3 Wn. App. 2d at 63. "A party may overcome this rebuttable presumption 'by establishing by clear and convincing proof that the property is separate, i.e., by tracing with some degree of particularity the separate source of funds used for the acquisition.'" In re Estate of Langeland, 177 Wn. App. 315, 325, 312 P.3d 657 (2013) (internal quotation marks omitted) (quoting Chesterfield v. Nash, 96 Wn. App. 103, 111, 978 P.2d 551 (1999), rev'd on other grounds sub nom. In re Marriage of Pennington, 142 Wn.2d 592, 14 P.3d 764 (2000)). But "[t]he fact title has been taken in the name of one of the parties does not, in itself, rebut the presumption of common ownership." Connell, 127 Wn.2d at 351. These same presumptions generally apply to debts incurred during a CIR. See Oil Heat Co., 26 Wn. App. at 353 ("A debt incurred by either spouse during marriage is presumed to be a community debt.").

Here, it is undisputed that the house, the mortgage, and Quin's interest in Quin Construction were all acquired or incurred during the CIR. Accordingly, on

remand, the trial court shall apply the rebuttable presumption that they are community-like in character. If, on remand, neither party rebuts the presumption by clear and convincing evidence, the trial court must treat the property or debt as community-like in character. If, however, a party rebuts the presumption, the court must still consider the community-like interest in the property at issue, including the extent to which community-like labor and income contributed to the property's value. Cf. In re Marriage of Bepple, 37 Wn. App. 881, 884, 683 P.2d 1131 (1984) ("It is well established the community is entitled to an equitable lien for its contribution to separate property.").

*Motion for Reconsideration*

As a final substantive matter, Pena argues that the trial court erred by denying her motion for reconsideration. We agree.

"Motions for reconsideration are addressed to the sound discretion of the trial court and a reviewing court will not reverse a trial court's ruling absent a showing of manifest abuse of discretion." Wilcox v. Lexington Eye Inst., 130 Wn. App. 234, 241, 122 P.3d 729 (2005). "A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." L.H., 198 Wn. App. at 194.

The trial court stated in its order denying reconsideration that "[Pena]'s Proposed Amended Final Dissolution Order was not signed because [the] parties had not conferred or agreed to change Section 7 on Page 2," i.e., the provision of the original order that awarded the SeaTac house to Quin. But because there is no requirement that parties agree or confer with regard to a change proposed in

15

a motion for reconsideration, the trial court abused its discretion by denying

Pena's motion based on the parties' failure to confer or agree. That said,

because we reverse on the merits, no additional remedy is warranted as a result

of this error.

*Fees on Appeal*

Quin requests fees on appeal, arguing that Pena's appeal is frivolous. But

as evidenced by our discussion above, Pena's appeal is not frivolous. See

Hanna v. Margitan, 193 Wn. App. 596, 615, 373 P.3d 300 (2016) ("'[A]n appeal is

frivolous if it raised no debatable issues on which reasonable minds might differ

and is so totally devoid of merit that no reasonable possibility of reversal exists.'"

(alteration in original) (quoting Protect the Peninsula's Future v. City of Port

Angeles, 175 Wn. App. 201, 220, 304 P.3d 914 (2013))). Therefore, we deny

Quin's request for fees on appeal.

*Conclusion*

We affirm the trial court's conclusion that Quin's petition was timely,

reverse the trial court's property distribution, and remand to the trial court to

characterize and distribute the property and debts acquired and incurred during

the CIR. On remand, the trial court will conduct further proceedings consistent

with this opinion.

WE CONCUR:

Andrus, A.C.J.