**FILED**
**OCTOBER 17, 2024**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 39468-9-III |
| | ) | |
| CRYSTAL DAWN BALLARD, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| SCOTT BALLARD, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — In this dissolution matter, Scott Ballard appeals the trial court's parenting plan and property award. He argues the trial court lacked sufficient evidence to impose parental restrictions, erred by declining to consider whether the parties were in a committed intimate relationship (CIR) at the time Crystal Ballard purchased the family home, and erred when it adopted Ms. Ballard's lay opinion of their home's value. We disagree with his arguments and affirm.

## FACTS

On January 8, 2022, Scott Ballard consumed so much vodka that he was unable to stand. Emergency personnel responded to the scene and eventually transported Mr.

Ballard to the hospital, where his blood-alcohol content (BAC) was 0.36 percent.[1]  In the

wake of this incident, Mr. Ballard's wife, Crystal Ballard, discovered alcohol bottles

concealed throughout the Ballards' home and in an outbuilding on the couple's property.

Ms. Ballard petitioned to dissolve the couple's marriage.

Relevant to this appeal, the Ballards at trial contested the following: (1) custody of

their two-year-old son, (2) the character of their family home as a separate or community

asset, and (3) the value of their home.

*Custody*

In her proposed parenting plan, Ms. Ballard sought primary residential placement

of the Ballards' son on the basis that Mr. Ballard suffered from long-term alcohol abuse

that obstructed his ability to parent.  Ms. Ballard further argued that Mr. Ballard's

alcoholism warranted the following parenting restrictions:

- Substance abuse evaluation

- Substance abuse therapy

- Substance abuse testing

- Prohibition against consuming alcohol

- Supervision of parental visits.

---

[1]  By comparison, a BAC reading of 0.08 or higher within two hours of driving renders a person guilty of the crime of driving while under the influence. RCW 46.61.502(1)(a).

Clerk's Papers (CP) at 9.

Conversely, Mr. Ballard argued that his history as the child's primary caregiver warranted awarding him primary residential placement. While Mr. Ballard conceded that he had abused alcohol on January 8, 2022 and for roughly one year prior, he characterized this abuse as an isolated interval that did not reflect a longer-term problem. Specifically, Mr. Ballard argued that his drinking during this period was attributable to marital stress and to grief over the death of his mother.

Ultimately, the trial court awarded Ms. Ballard primary custody and imposed parenting restrictions on Mr. Ballard. When imposing its restrictions, the court cited not just the January 8, 2022 incident but indeed a pattern of incidents that suggested recurrent intoxication on Mr. Ballard's part—incidents both preceding January 8, 2022 and subsequent to that date.

Of the incidents cited, two derived from Mr. Ballard's own testimony. Specifically, Mr. Ballard admitted that on consecutive nights, two months after the January 8, 2022 incident, he had consumed multiple shots of vodka.

The balance of the incidents derived from Ms. Ballard's testimony, which Mr. Ballard did not meaningfully contradict. Specifically, Ms. Ballard testified that Mr. Ballard had, variously: (1) cursed, with slurred speech, at Ms. Ballard's daughter from another marriage, (2) become intoxicated and refused "about ten times" to complete his

tax return, (3) left "huge food messes in the kitchen" late at night, (4) become so intoxicated that Ms. Ballard's son from another marriage had needed to lift Mr. Ballard off the floor, and (5) become so intoxicated that Mr. Ballard had yelled at Ms. Ballard's son—then an eighth grader—about not having sexual intercourse. Rep. of Proc. (RP) at 213, 211. The first incident described above occurred seven months before January 8, 2022.

Finally, the trial court when imposing its parenting restrictions cited Mr. Ballard's "very, very high" BAC on January 8, 2022—implying that this BAC was relevant to a finding of long-term alcohol abuse. RP at 381.

*Family home*

In her petition for dissolution, Ms. Ballard characterized the Ballards' family home as separate property she had acquired before marriage. Supporting this contention was a tax affidavit indicating that Ms. Ballard had purchased the home from her parents in 2016, prior to the Ballards' 2017 marriage.

Mr. Ballard did not dispute that Ms. Ballard had purchased the home from her parents prior to the couple's marriage. However, in his response to Ms. Ballard's petition, Mr. Ballard disagreed with Ms. Ballard's characterization of the couple's real property, and instead argued that there was a "community interest in the [couple's] home." CP at 33.

4

At trial, Mr. Ballard argued for the first time that the couple's home had been purchased during a time when the Ballards were engaged in a CIR—an assertion that if true would render the home presumptive community property. Mr. Ballard offered this argument even though his previous attorney, at a pretrial hearing, had not corrected opposing counsel's statement that Mr. Ballard was alleging only a community interest in the home, and not alleging a CIR.

Ms. Ballard moved to exclude Mr. Ballard's evidence of a CIR, arguing Mr. Ballard had waited too long to raise that issue, creating unfair surprise. The court granted Ms. Ballard's motion, stating that, "We don't do trial by surprise here." RP at 101. The court further stated that "alleging a committed, intimate relationship is different than . . . alleging that there's a community interest in a separate property home." RP at 101.

At the close of trial, the court awarded the family home, as separate property, to Ms. Ballard. However, the court also found that Mr. Ballard, an architect, had created a $10,000 community interest in the home by designing and implementing various renovations. The court further found that the Ballards had created a $16,457 community interest in the home through joint mortgage payments. The court awarded the home's full community interest—$26,457—to Ms. Ballard, while compensating Mr. Ballard with full ownership of a $30,000 lot the community owned in the Bahamas.

*Home valuation*

Ms. Ballard valued the family home at $380,000. Ms. Ballard derived this figure from the property's tax-assessed value of $340,000, adjusted upward to reflect unfinished improvements the community had administered to the home. However, because Mr. Ballard objected to the home's tax-assessed value as hearsay, Ms. Ballard withdrew the exhibit containing the tax-assessed value. As a result, Ms. Ballard's $380,000 valuation remained on the record with no context to support it besides Ms. Ballard's descriptions of the home's partly finished state. Ms. Ballard did not order an appraisal.

Mr. Ballard, on the other hand, valued the family home at $500,000. Mr. Ballard derived this figure from his expertise as an architect, and from the fact that the home in its renovated condition had five bedrooms and three bathrooms, rather than the two bedrooms and one bathroom Mr. Ballard claimed the tax report reflected. Mr. Ballard also testified that he and Ms. Ballard, when discussing refinancing, had together assumed that the house was worth $500,000. Although Mr. Ballard ordered an appraisal, he ultimately did not offer the appraisal as evidence.

In its oral ruling, the trial court concluded that "[n]either party really provided a basis for their assessments." RP at 387-88. Nevertheless, the court adopted Ms. Ballard's $380,000 valuation, finding this figure to be "a more appropriate assessment of the value of the home, particularly given the amount of credit card debt Ms. Ballard has

6

assumed post separation in getting those bathrooms done, replacing the stairs on the deck and other trim work and different things." RP at 388. The court also noted that photographs of the home, submitted as evidence, established that the house, as of the couple's separation, clearly was not finished.

Mr. Ballard timely appeals the court's (1) parenting restrictions, (2) refusal to consider evidence of a CIR, and (3) valuation of the Ballards' home.

ANALYSIS

PARENTING RESTRICTIONS

Mr. Ballard argues the parenting restrictions the trial court imposed were improper where no evidence supported the conclusion that Mr. Ballard suffered from long-term alcohol abuse. We disagree.

*Standard of review*

This court reviews parenting plans for abuse of discretion. *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). A trial court operates within its discretion where its findings derive from the factual record, its conclusions apply sound law, and its decisions are not manifestly unreasonable. *In re Marriage of Bowen*, 168 Wn. App. 581, 586-87, 279 P.3d 885 (2012). Where a trial court in a family law matter enters findings of fact, those findings must derive from substantial evidence. *In re Marriage of Rideout*, 150 Wn.2d 337, 352, 77 P.3d 1174 (2003). Substantial evidence is

that quantum of evidence necessary to persuade a fair-minded person of the truth of the premise. *In re Dependency of J.D.P.*, 17 Wn. App. 2d 744, 755, 487 P.3d 960 (2021).

*Alcohol abuse*

A trial court may impose parenting restrictions where a child's best interests are put at hazard by a parent's "long-term impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting functions." RCW 26.09.191(3)(c). Courts should impose such restrictions only where "necessary to 'protect the child from physical, mental, or emotional harm.'" *Chandola*, 180 Wn.2d at 648 (quoting RCW 26.09.002). However, courts need not wait for such harm to accrue before intervening. *Id.* at 645.

Here, Mr. Ballard argues the trial court should not have imposed restrictions under RCW 26.09.191(3)(c) because there was "no evidence whatsoever indicating that Scott ha[d] a long-term impairment from alcohol abuse." Br. of Appellant at 19. Underpinning this contention is the assumption that Mr. Ballard's alcohol-related incident on January 8, 2022 was merely an isolated occurrence.

However, the trial court determined and this court agrees that sufficient evidence supported the finding that Mr. Ballard's alcohol abuse was long-term. First, Ms. Ballard's testimony recounted five or more occasions on which Mr. Ballard had exhibited drunken behavior, the earliest of which incidents occurred seven months before

January 8, 2022. Moreover, Mr. Ballard himself testified that he drank multiple vodka shots on separate nights in March 2022—two months after the January 8, 2022 incident. Taken as a whole, this evidence suggests that Mr. Ballard drank heavily in the runup to January 8, 2022, and continued drinking after that date, despite suffering alcohol-related hospitalization. In other words, his consumption on January 8, 2022 was not an isolated occurrence.

Second, the details surrounding Mr. Ballard's hospitalization on January 8, 2022 suggest that his drinking that day was not an isolated affair. Specifically, Mr. Ballard registered a BAC of 0.36 percent, which is more than four times the BAC threshold for being guilty of driving under the influence. This BAC alone suggests that Mr. Ballard's body was accustomed to abusive drinking. Were his body not so accustomed, such a quantity of alcohol would likely have made it impossible for Mr. Ballard to maintain consciousness, interact with responding paramedics, and be led out of the house on his feet.

Finally, the fact that Mr. Ballard, as of January 8, 2022, was concealing alcohol throughout the Ballard home and in outbuildings on the Ballard property suggests that his drinking had reached an advanced stage. Simply put, an individual on a one-day bender does not lay up stores of alcohol that he may avail himself of later.

9

Because the evidence, taken as a whole, suggests that Mr. Ballard's alcohol abuse was both (1) long-term, and (2) corrosive to his conduct, the trial court was justified in concluding that Mr. Ballard's alcohol abuse posed a threat to his child's best interests. As such, Mr. Ballard's drinking warranted parenting restrictions. RCW 26.09.191(3)(c). While the evidence did not show that actual harm had befallen the Ballards' son, the mere threat of such harm justified those restrictions. *Chandola*, 180 Wn.2d at 645.

COMMITTED INTIMATE RELATIONSHIP

Mr. Ballard argues the trial court erred where it refused to consider evidence of a CIR between him and his wife at the time she purchased the family's home. We disagree.

*Standard of review*

Where a trial court refuses to consider the existence of a CIR, we review that decision for abuse of discretion. *See In re Marriage of Neumiller*, 183 Wn. App. 914, 920, 335 P.3d 1019 (2014). This standard applies irrespective of whether we color the court's decision as an evidentiary matter or as a matter of leave to amend pleadings. *State v. Munguia*, 107 Wn. App. 328, 334, 26 P.3d 1017 (2001) (evidentiary matter); *Neumiller*, 183 Wn. App. at 920 (leave to amend pleadings).

10

*Existence of CIR*

Just as property acquired during a marriage presumptively belongs to the marital community, property acquired during a CIR likewise belongs, presumptively, to both of the relationship's parties. *In re Committed Intimate Relationship of Muridan*, 3 Wn. App. 2d 44, 56, 413 P.3d 1072 (2018). Where a party in a dissolution action alleges that a CIR predated the marriage, that party may raise the CIR issue as late as the day of trial. *Neumiller*, 183 Wn. App. at 918, 923. Notwithstanding this rule, a trial court may exclude otherwise admissible evidence where the evidence's probative value "is substantially outweighed by the danger of unfair prejudice." ER 403.

Here, Mr. Ballard argues the trial court should have allowed him to allege the existence of a CIR on the day of trial, even though his response to Ms. Ballard's petition alleged only a community interest in the family home, and not a CIR. In support of his argument, Mr. Ballard relies almost exclusively on *Neumiller*, where this court held that a party to a dissolution action may allege a CIR as late as the day of trial. 183 Wn. App. at 918, 923.

In many respects, *Neumiller* is analogous to the case at bar and would be controlling. In *Neumiller*, as in this case, the respondent spouse purchased what would become the family home while the couple was dating but before the couple married. 183 Wn. App. at 917. The marriage dissolved, and in the runup to a dissolution trial, the

11

respondent claimed the family home was separate property while the appellant claimed the house was community property. *Id.* at 917-18. It was not until the day of trial that the appellant alleged the existence of a CIR that would potentially alter the character of the disputed property. *Id.* at 918. The trial court refused to consider the existence of a CIR, concluding that the appellant had raised the issue "'way too late in the game.'" *Id.* We reversed, and held that a party in a dissolution action may allege the existence of a CIR as late as the day of trial. *Id.* at 923.

However, *Neumiller* is distinguishable on two bases. First, Mr. Ballard's counsel at the hearing before trial stood silent while Ms. Ballard's counsel stated on the record that she expected Mr. Ballard to allege only a community interest in the family home, and not to allege a CIR. Indeed, the trial court after counsel made this statement even asked Mr. Ballard's attorney if she wished to respond, to which Mr. Ballard's attorney replied, "No, Your Honor. I think the information I provided is sufficient." RP at 88. By failing to correct Ms. Ballard's expectation, Mr. Ballard's attorney signaled to Ms. Ballard that she could reliably assume he would not allege a CIR.

Second, we determined[2] in *Neumiller* that the wife's late assertion of a CIR should not have surprised Mr. Neumiller. *Id.* By contrast, the trial court here stated that Mr. Ballard's late assertion of a CIR *would* surprise Ms. Ballard. This statement by the trial court amounts to a finding, and as such, we must defer to it. *Zink v. City of Mesa*, 17 Wn. App. 2d 701, 708, 487 P.3d 902 (2021).

Having determined that Mr. Ballard's late assertion of a CIR would unfairly surprise Ms. Ballard, the trial court was justified, under ER 403, in excluding evidence of such a relationship.

HOME VALUATION

Mr. Ballard argues the trial court erred where it valued the Ballards' home at $380,000 despite (1) Ms. Ballard offering no evidence supporting that value, and (2) Mr. Ballard, an architect, assigning a significantly higher value to the home. However, Mr. Ballard's professional credentials did not obligate the trial court to adopt his valuation of the Ballards' home. Because the value the court assigned to the home derived from available evidence, we affirm.

---

[2] In *Neumiller*, the trial court concluded that amending a pleading could not be done at trial. 183 Wn. App. at 922. On that basis, we reversed. *Id.* The *Neumiller* trial court did not make a finding whether the late amendment created an unfair surprise to Mr. Neumiller.

*Standard of review*

Findings of fact supporting a division of marital property draw review under the substantial evidence standard. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). Substantial evidence is that quantum of evidence necessary to persuade a fair-minded person of the truth of the premise. *Dependency of J.D.P.*, 17 Wn. App. 2d at 755.

*Valuation*

Where parties to a marital dissolution assign conflicting values to an asset, the trial court "may adopt the value asserted by either party or any value in between the two." *Rockwell*, 141 Wn. App. at 250. A party who testifies as to the value of their home has furnished admissible evidence as to that value, to which evidence the trier of fact may, in its discretion, assign appropriate weight. *Worthington v. Worthington*, 73 Wn.2d 759, 763, 440 P.2d 478 (1968).

Here, the trial court adopted the $380,000 home value Ms. Ballard proposed. Because Ms. Ballard proposed that value, the value was supported by at least some measure of evidence. *Id.* Moreover, the value Ms. Ballard proposed and the trial court adopted plainly satisfied the *Rockwell* principle articulated above. 141 Wn. App. at 250.

Further supporting the $380,000 valuation was testimony and photographic evidence establishing that the home improvements on which Mr. Ballard based his higher

valuation were, as of the date of separation, unfinished. Because the renovations were not finished, the trial court was justified in discounting Mr. Ballard's valuation even if Mr. Ballard's professional credentials might have bolstered his credibility. Mr. Ballard also effectively conceded that the home's tax-assessed value—reflecting its unimproved condition—was meaningfully less than the value he proposed.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Fearing, J.

Cooney, J.